**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 2:11-cr-00110-RLH -VCF-1 |
| v. ) | |
| ) | MOTION TO DISMISS |
| DE RONG SHANG, ) | SUPERSEDING INDICTMENT (#82) |
| ) | |
| Defendant. ) | |
| ) | |

# REPORT & RECOMMENDATION

The defendant, De Rong Shang, is under indictment on charges of wire fraud (18 U.S.C. § 1343), conspiracy to commit wire fraud (18 U.S.C. § 1349), and aiding and abetting (18 U.S.C. §2). The matter before the court is defendant Shang's Motion to Dismiss Superseding Indictment (#82). The government filed an Opposition (#103), and defendant Shang filed a Reply (#108).

## BACKGROUND

On March 22, 2011, the government filed an indictment against defendants Shang and Eaton for mail fraud (18 U.S.C. § 1341), conspiracy to commit mail fraud (18 U.S.C. § 1349), and aiding and abetting (18 U.S.C. §2). (#1). On April 29, 2011, Mr. Shang appeared before the court at his initial appearance and arraignment and plea, and entered a plea of not guilty. (#15). Subsequently, on May 5, 2011, Ms. Eaton made her initial appearance and entered a plea of not guilty. (#18). Upon stipulation by the parties (#28), the court continued the trial date until October 17, 2011. (#29).

On July 15, 2011, defendant Shang filed a motion to dismiss the indictment, because "[b]y virtue of the [i]ndictment's own allegations,...the [g]overnment cannot state an offense under Mail Fraud statute, 18 U.S.C. § 3141." (#30). On the same day, the defendants filed a joint motion to sever

defendants' trial. (#31). On September 26, 2011, the court filed a report and recommendation (#51), recommending that the indictment be dismissed because the indictment did not demonstrate that the mailing of the letters to the bank were in furtherance of the scheme to defraud, and because the mailings occurred *after* the defendants completed the scheme. The government filed an objection (#52) on September 26, 2011, and defendant Shang filed a response to the objection on October 3, 2011. (#53).

On October 7, 2011, the court issued an order granting the motion to sever the trials of defendants Eaton and Shang. (#56). Trial was set for October 17, 2011, at 8:30 a.m. On October 11, 2011, the government filed superseding indictments as to Shang and Eaton, alleging claims for conspiracy to commit wire fraud (18 U.S.C. § 1349), wire fraud (18 U.S.C. § 1343), and aiding and abetting (18 U.S.C. §2). On October 12, 2011, at calendar call, Judge Hunt held that in light of the superseding indictment (#57), the motion to dismiss the original indictment (#30) was moot. The trial for Shang was set for October 31, 2011, but was subsequently continued to February 6, 2012. (#69).

**DISCUSSION**

**I.      Motion To Dismiss (#82)**

In defendant Shang's motion to dismiss superseding indictment (#82), he asks this court to dismiss the indictment because of the pre and/or post indictment delay and because the indictment fails to state an offense of wire fraud under 18 U.S.C. § 1343. The court will address each of defendant Shang's arguments and the government's opposition thereto.

**A.      Pre-Indictment and Post Indictment Delay**

Defendant Shang asserts that the procedural history, as outlined above, demonstrates that the government has been unnecessarily delaying the case in order to "gain a tactical advantage over the defendant." (#82-1). Not only did the government wait nearly four years before filing the indictment, but, despite knowing of its intention to file charges for wire fraud, it waited until the day before calendar call to file the superseding indictment (#57) alleging wire fraud. *Id.*

**1.      Fifth Amendment Violation**

Prosecutorial pre-indictment delay may deny a defendant his Fifth Amendment due process

rights under certain circumstances. *United States v. Valentine,* 783 F.2d 1413, 1416 (9th Cir. 1986). In alleging a violation of this right, the defendant must demonstrate that (1) the delay caused him "actual prejudice," and (2) that the length of the delay, when balanced against the government's reasons for the delay, offends those "fundamental conceptions of justice which lie at the base of our civil and political institutions." *Id.* (citing *United States v. Moran,* 759 F.2d 777, 780 (9th Cir.1985)). The defendant has a heavy burden in proving that the "pre-indictment delay caused actual prejudice: the proof must be definite and not speculative." *Id.* (quoting *Moran,* 759 F.2d at 782). Simply demonstrating investigative delay is insufficient, and the defendant must show that the delay was undertaken by the government "solely to gain a tactical advantage over the accused..." *United States v. Lovasco,* 431 U.S. 783, 795 (1997)(internal quotation marks and citation omitted).

### a. Actual Prejudice

Defendant Shang alleges that the pre-indictment delay has resulted in the defendant's inability to offer exculpatory evidence and in the dimming of witnesses' memories and lost evidence. (#82-1). Defendant asserts that "key witness" Richard Slack, former manager at several of the subject casinos, has fled the country since the filing of the indictment, and is unable to testify at the trial. *Id.* Mr. Slack allegedly signed off on most, if not all, of the "credit received," and is arguably the only individual who could testify as to Shang's innocence and as to the fact that Shang "brought high rollers into the subject casinos for the purpose of gaining the subject [c]asino's respect and in a further effect to become a "junket" or licensed recruiter for the [c]asinos." *Id.* Defendant argues that the government's four-year delay is the direct cause of defendant's inability to offer Mr. Slack's evidence at trial. *Id.* Therefore, he asserts, he is "actually prejudiced" by the delay. *Id.*

With regard to the "dimming memories and lost evidence," the defendant asserts that, as a result of the four year delay, "witnesses from all three subject casinos are either no longer employed or cannot be located." *Id.* These witnesses, including former casino hosts, dealers, and pit bosses, could have corroborated defendant's defense, defendant Shang argues, if they could have been located and subpoenaed. *Id.* However, since four years passed since the alleged conspiracy occurred, these

witnesses are unable to be found. *Id.* Defendant Shang argues that the only way the jury will hear defendant's "true motive," is if he decides to waive his constitutional right not to testify at trial. *Id.* This, he asserts, is an unfair result of the pre-indictment delay. *Id.*

The government argues in its opposition (#103) that defendant Shang has only "speculated" as to what prejudice he has suffered, as he only asserted what Mr. Slack "would have" or "could have" testified to. *United States v. Doe,* 149 F.3d 945, 949 (9th Cir. 1998)(holding that "[s]peculation regarding whether [defendant] could have found the blue pack [the government withheld] and whether it would have contained exculpatory evidence fails to establish actual prejudice."). Further, the government argues that defendant Shang has only provided the court with a generalized assertion of dimming memories and lost evidence, which is insufficient to demonstrate "actual prejudice." *United States v. Manning,* 56 F.3d 1188, 1194 (9th Cir. 1995)(holding that the defendant had not shown actual prejudice as a result of the pre-indictment delay caused by an error on the part of the investigators, because he only made "generalized assertions of the loss of memory, witnesses, or evidence.").

In defendant Shang's reply (#108), he argues that the pre-indictment delay was not cause by investigation, as evidence (#108 Exhibits A, B, & C) demonstrates that the investigation was nearly complete *years* prior to the 2011 indictment. With regard to the "speculative" prejudice the government asserts, defendant Shang reiterates his inability to offer exculpatory evidence from "*the* primary person whose name is repeatedly mentioned throughout most if not all the documents that the [g]overnment produced in discovery," Executive Vice President for Asian Marketing, Mr. Slack. (#108 Exhibits D & E). Shang argues that he has met the "heavy burden" of demonstrating actual prejudice, and that the cases cited by the government are distinguishable from the instant case. (#108); See *United States v. Marion,* 404 U.S. 307, 325 (1971)(holding that "[t]o accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case."). Defendant Shang asserts that he is not speculating, as he has demonstrated *what* Mr. Slack's testimony would be and that there are no "adequate substitutes," and has even provided "tangible evidence" to show how the missing testimony would support his defense.

4

See *United States v. Barken,* 412 F.3d 1131, 1135 (9th Cir. 2005)(finding that no prejudice existed, where there were "adequate substitutes" for the missing evidence.); See also *United States v. Gonzalez-Sandoval,* 894 F.2d 1043, 1051 (9th Cir. 1990)(holding that the defendant's claimed prejudice was speculative, because "[n]o proffer was made of how the missing testimony would support [defendant]'s claims.").

### b. Length of Delay/Tactical Advantage

Defendant Shang argues that the length of the delay was unreasonable: the last alleged incident associated with the alleged scheme occurred on March 28, 2007, and "302" witness statements date back to 2008, yet defendant Shang was not indicted until March 22, 2011. (#82-1). This, defendant asserts, "surely amounts to a tactical advantage over Mr. Shang." *Id.* In the government's opposition (#103), it argues that defendant Shang has failed to demonstrate to the court that the alleged delay was "undertaken solely to gain a tactical advantage over" the defendant, especially when the case involves a large white collar conspiracy to commit wire fraud. See *United States v. Sherlock,* 962 F.2d 1349, 1354 (9th Cir. 1989)(holding that the record must demonstrate that the government's delay was undertaken to gain a tactical advantage, and that a prosecutor "may have wide latitude to decide when to seek an indictment, especially when a case involves more than one person.").

Further, the government asserts that any delay "is a double-edged sword," as the government's witnesses are no less susceptible to memory loss, disappearance, and death than are defense witnesses. *Marion,* 404 U.S. at 322(delay "may also weaken the [g]overnment's case."). In reply to the government's opposition (#108), defendant Shang asserts that the "only possible reason" for the four year delay between the events occurring and the defendant being indicted, was "for tactical advantage," "plain an[d] simple."

### c. Discussion

Although the government brought the indictment within the applicable statute of limitations, "the statute of limitations does not fully define the [defendant's] rights with respect to events occurring prior to indictment." *Marion,* 404 U.S. at 322-24(holding that while "the applicable statute of

5

limitations . . . is . . . the primary guarantee against bringing overly stale criminal charges," "it is appropriate to note here that the statute of limitations does not fully define the [defendant's] rights with respect to the events occurring prior to indictment."). Thus, the court must examine whether the delay caused *actual prejudice* to the defendant, and whether the delay was an *intentional* device used by the government to gain a tactical advantage over the defendant. *Id.* at 324. (emphasis added).

With regard to the actual prejudice, defendant Shang has demonstrated that Mr. Slack, the alleged sole witness with exculpatory testimony, has fled the country. (#81-1 & 108). The defendant has also argued to the court what Mr. Slack would have testified to, and that there are no "adequate substitutes." See *Barken,* 412 F.3d at 1135. However, the court finds that the defendant has an "adequate substitute," Mr. To, who will allegedly testify in support of defendant's defense. The defendant has been permitted to depose Mr. To (#111), and in the event that ruling is overturned, a subpoena (#120) has been issued requiring Mr. To to testify at trial.

The court recognizes that the indictment was filed against defendant Shang several years after the last alleged incident in furtherance of the scheme occurred and after the investigation began. However, in cases alleging a complex conspiracy, such as this, involving several co-conspirators, recruits, and casinos, the prosecutor "has wide latitude" in deciding when to file the indictment. See *Sherlock,* 962 F.2d at 1354. Further, besides arguing that the "only possible reason" for the delay is to gain a tactical advantage, defendant Shang has not demonstrated to the court that it was the government's *intention* to gain a tactical advantage. See *Marion,* 404 U.S. at 324.

**2.     Sixth Amendment Violation**

The right to a speedy and public trial guaranteed by the Sixth Amendment is "fundamental, and is imposed by the Due Process Clause of the Fourteenth Amendment." *Barker v. Wingo,* 407 U.S. 514, 516 (1972)(citing *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969)). In assessing whether a Sixth Amendment violation has occurred, the court weighs four factors: (1) length of the delay between accusations and trial, (2) reasons for the delay, (3) timeliness and manner of defendant's right to a speedy trial, and (4) the prejudice caused by the delay. *Id.*

6

### a. Arguments

Defendant Shang argues that his Sixth Amendment right to a speedy trial was violated when the government waited six and a half months *after* his initial arrest, and after extensive motion practice, to file the superseding indictment (#57) alleging a completely different charge of wire fraud. (#82-1). This superseding indictment, filed one day before calendar call, forced defendant Shang to not only agree to another continuance of the trial, but to "substantially modify his theory of the defense." *Id.* What is even more egregious, defendant argues, is that the government admitted at calendar call that it knew and informed defense counsel, "from day one," of the additional potential charge, yet waited *six months* before filing the superseding indictment charging wire fraud. *Id.* Defendant Shang asserts that the only reason the government waited, was to gain a tactical advantage and to force defendant Shang to waste both time and expenses filing motions that would become "moot" in light of the superseding indictment. *Id.*

The government argues in its opposition that defendant Shang has not satisfied the four factors enumerated in *Barker*. (#103). In *Doggett v. United States,* 505 U.S. 647 (1992), the court separated the first *Barker* factor, the length of the delay, into two separate inquiries. First, the court must examine if "the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay." *Doggett,* at 651-52. This "presumptively prejudicial" delay is generally found when the delay approaches one year, and is deemed unreasonable enough to trigger the *Barker* factors. *Id.* at 652, n. 1. If the threshold showing is made, the court then considers the "extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.* at 652. The government argues that defendant Shang cannot even pass the first factor of *Barker,* because the delay, of less than 10 months, is reasonable in light of the nature of the charges and the extensive discovery. See *Doggett,* at 652 n.1(holding that the significance of the delay depends on the "nature of the charges.").

The government asserts that, even if the court finds that the first factor weighs in favor of the defendant, defendant Shang has failed to satisfy the three other factors. (#103). The reasons for the

7

delay include: the extensive discovery involved, the numerous pre-trial motions filed by the defendant that required full briefing and oral arguments, and the stipulations to continue trial. *Id.* With regard to the timeliness and manner of the defendant's assertion of his right to a speedy trial, the government argues that this factor weighs against defendant Shang, because defendant waited until *after* being granted two continuances from the court to assert this right. (#103);See *United States v. King,* 483 F.3d 969, 976 (9th Cir. 2007)(holding that the third factor weighed against the defendant because "at times [defendant] asserted his right to a speedy trial, [but] at other times he acquiesced in and sought continuances and exclusions of time."). As to the final factor, the prejudice, the government asserts that defendant Shang has not demonstrated that his trial strategy is impaired in any way. (#103).

Defendant Shang argues in his reply (#108) that "[a]t a minimum, the [c]onspiracy charge should be dismissed," because "[n]either the 30-day or 70-day clocks under the Speedy Trial Act ("STA") are restarted upon the filing of a superseding indictment." *United States v. Rojas-Contreras,* 474 U.S. 231, 234-37 (1985). The superseding indictment (#57) charges two of the same offenses as in the original indictment: conspiracy in violation of 18 U.S.C. § 1349, and aiding and abetting in violation of 18 U.S.C. § 2. Defendant's STA clock began running on April 25, 2011, the day of his arraignment and plea, and defendant argues that the clock did not stop running just because he later entered into a stipulation to continue the trial date. *United States v. Ramirez-Cortez,* 213 F.3d 1149, 1156 (9th Cir. 2000)(rejecting the government's argument that the defendant "forfeited his right to invoke the Speedy Trial Act by stipulating to the continuance," and holding that the defendant cannot waive time under the Speedy Trial Act.).

Defendant also argues that he did not "ask" for the stipulations to continue trial "on his own accord and for no particular reason." (#108). Rather, defendant asserts, the first stipulation was the result of the voluminous discovery which consisted of thousands of "unindexed documents" that were "dumped upon him," and the second stipulation was filed as a direct result of the government's "eleventh hour" filing of the superseding indictment just seven days before trial. *Id.* Thus, defendant asserts, it is clear that an STA violation has occurred, at least with respect to the conspiracy charge. *Id.*

With regard to the *Barker* factors, the defendant argues that the government made a strategic tactical decision when it knew of the possible wire fraud charge, but waited until after the defendant filed a motion to dismiss, the court held a hearing on the motion and issued its report and recommendation, the government filed an objection, and the defendant filed a reply, to finally file the superseding indictment. (#108). Defendant Shang asserts that it is clear that his trial strategy has been impaired, because the superseding indictment (#57) now charges wire fraud, relating to "before the fact" wires, and the original indictment (#1) charging mail fraud, related to "after the fact" mailings. *Id.* "It should go without saying," defendant Shang argues, that both the defense and prosecution had to modify their strategies. *Id.* Defendant reasserts his arguments relating to the necessity of Mr. Slack's testimony, and points to the fact that defendant Shang has been forced to seek relief from the court to take the deposition of Mr. To in Mr. Slack's absence. *Id.* In conclusion, defendant Shang argues that his defense team worked zealously preparing his defense and defending his pretrial motions, while the government "was obtaining more evidence in support of a new charge that Mr. Shang had no reason to suspect would be levied against him." *Id.*

### b. Discussion

The court will first address defendant Shang's arguments relating to the conspiracy charge being dismissed because the STA clock was not restarted when the superseding indictment was filed. Defendant Shang relies on the Supreme Court case of *Rojas-Contreras,* where the court held that the filing of a superseding indictment does not restart the STA's 30-day trial preparation period or 70-day must be tried period. *Rojas-Contraras,* 474 U.S. at 234-37. In that case, defendant was a previously deported illegal alien who illegally re-entered the United States. *Id.* at 233. The original indictment indicated that his previous conviction for illegal entry was on December 17, 1981. *Id.* However, the actual date of his previous conviction was December 7, 1981. *Id.* Four days before trial, the grand jury returned a superseding indictment that corrected the typographical error, but that was "identical with the original indictment in all [other] respects." *Id.* One day before trial, the defendant was arraigned on the superseding indictment. *Id.* The defendant moved for a 30-day continuance pursuant to the

9

STA, and the District Court denied the motion. *Id.* Defendant appealed, and argued that the superseding indictment restarted his 30-day trial preparation period. *Id.*

The Court of Appeals reversed the District Court's decision, and held that defendant was entitled to a new 30-day trial preparation period. *Id.* at 234. The Supreme Court granted certiorari, and reserved the Court of Appeals. The court stated that the 30-day period begins at the first appearance through counsel, and that the 70-day period begins at the filing of the indictment or information. *Id.* at 234-235. The court held that Congress did not intend for the 30-day period to begin at the filing of the indictment or at the filing of a superseding indictment, as the language of the statute states otherwise. *Id.* Thus, the court held, the 30-day period did not restart at the filing of the superseding indictment. *Id.* With regard to the 70-day period, the court stated that "where the superseding indictment adds new charges, trial of the original charges must begin within the time limit for commencement of trial on the original indictment or information." *Id.* at 236.

The instant case is distinguishable from *Rojas-Contreras*. Here, the superseding indictment did not merely fix a typographical error, and, as admitted by the defendant, alleges different charges of wire fraud, conspiracy to commit wire fraud, and aiding and abetting. (#57). While it is true that the 70-day clock would not restart upon the filing of "new charges" in the superseding indictment, and the commencement of the trial on the original charges would need to be within 70-days of the original indictment, the superseding indictment (#57) filed in this case doesn't "add" charges, it alleges different charges. Further, the court has recommended upon motions by both parties, for the dismissal of charges in the original indictment (#1). Thus, the dismissal of the conspiracy to commit wire fraud charge under the Sixth Amendment is not warranted.

With regard to weighing the *Barker* factors, the court finds that as the alleged delay is not "presumptively prejudicial," the delay is not unreasonable enough to trigger an examination of the factors. *Barker,* 407 U.S. 514, 516; See also *Doggett*, 505 U.S. 651-52. Here, the original indictment (#1) was filed on March 22, 2011, defendant Shang's initial appearance was on April 25, 2011, the superseding indictment was filed on October 11, 2011 (#57), and the trial is scheduled for February 6,

10

2011. Ten months have passed since defendant Shang first made his appearance before the court, and less than five months have passed since the filing of the superseding indictment. The case involves several thousands of pages of documents (including bank records that have just recently been produced from the bank), and alleges a conspiracy involving numerous casinos, recruits, and co-conspirators that spanned roughly six-months. In light of the nature of the case, the "the interval between accusation and trial" has not crossed the threshold to "presumptively prejudicial." *Doggett*, at 651-52, n.1 (holding that "presumptively prejudicial" delay is generally found when the delay approaches one year, and is deemed unreasonable enough to trigger the *Barker* factors, and that the significance of the delay depends on the "nature of the charges."). Therefore, the court need not address the other *Barker* factors. *Id.*

### 3. Federal Rule of Criminal Procedure 48(b)

Pursuant to Fed. R. Crim. P. 48(b), "[t]he court may dismiss an indictment, information, or complaint if unnecessary delay occurs in: (1) presenting a charge to a grand jury; (2) filing an information against a defendant; or (3) bringing a defendant to trial." Even where the delay does not amount to a Sixth Amendment violation, it is within the court's inherent power to dismiss an indictment under Rule 48(b). *United States v. Henry,* 815 F. Supp. 325 (D.Az. 1993)(citing *United States v. Hattrup,* 763 F.2d 376, 377 (9th Cir. 1985)(holding that "[i]f there is unnecessary delay in bringing a defendant to trial," "[i]t is within the trial court's inherent power under Rule 48(b) to dismiss a case with prejudice for prosecutorial delay not amounting to a Sixth Amendment violation."). Exercising this power should be done "with caution, and only after a forewarning to prosecutors of the consequences." *Hattrup,* at 377.

#### a. Arguments

Defendant Shang asks this court to exercise its inherent power, and dismiss the indictment pursuant to Rule 48(b). (#82-1). The government argues that Rule 48(b) is inapplicable here, as it is a "house-keeping rule," allowing a district court to maintain control over its calendar and dismiss cases that lie dormant post-arrest. (#103);*United States v. Huntley,* 976 F.2d 1287, 1291-92 (9th Cir. 1992)(holding that Rule 48(b)'s dismissal power applies to inactive cases that have been inactive for

prolonged period of time).  Further, the government asserts, there has been no "forewarning" by the District Judge that the case is subject to dismissal under Rule 48(b).  See *Huttrup,* at 377; See also *Huntley,* at 1292.  Defendant Shang's reply (#108) does not address defendant's request to dismiss the indictment under Rule 48(b).

### b. Discussion

The court agrees with the government that Rule 48(b) is not applicable to this case.  The instant case has not been lying dormant for months, and in fact, the docket evidences that both the government and the defendant have been actively filing motions, participating in discovery, and preparing for trial.  See *Huntley,* 976 F.2d at 1291-92.  The District Judge, who has been abreast of the proceedings, did not find it necessary to forewarn the government that there was a possibility of dismissal.  *Hattrup,* at 377.  Thus, dismissal under Rule 48(b) is not warranted.

### B.    Failure To State An Offense of Wire Fraud

### 1. Failure To Allege Materiality

#### a. Arguments

Pursuant to Rule 7(c), "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government."  Fed. R. Crim. P. 7(c).  "[A]n indictment's complete failure to recite an essential element of the charged offense is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of the indictment." *United States v. Omer,* 395 F.3d 1087, 1088 (9th Cir. 2005).

Defendant Shang is charged with wire fraud, in violation of 18 U.S.C. § 1343.  The elements of wire fraud are: (1) scheme to defraud, (2) use of the wires in furtherance of the scheme, and (3) a specific intent to deceive or defraud.  *United States v. Green,* 592 F.3d 1057, 1064 (9th Cir. 2010).  The phrase in the first element, "scheme to defraud," is not defined in the statute, and consequently, the Supreme Court has held "materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes." *Needer v. United States,* 527 U.S. 1, 21, 25 (1999); See also *Omer*, 395 F.3d

1   at 1089 (stating that "materiality of the scheme is an essential element of bank fraud.").

2   Defendant Shang asks this court to dismiss the indictment because the indictment fails to allege
3   an essential element of the offense, materiality. (#82-1). Shang argues that upon a close reading of the
4   superseding indictment (#57), it is clear that it does not allege that Shang or his "recruits" made any
5   "affirmative misrepresentations" or "material omissions, concealments, or non-disclosures." *United*
6   *States v. Benny,* 786 F.2d 1410, 1418 (9th Cir. 1986). Further, defendant Shang asserts that, absent a
7   fiduciary duty, an indictment based upon an omission or concealment cannot support a charge of wire
8   fraud. *Id.* (holding that "a non-disclosure can only serve as a basis for a fraudulent scheme when there
9   exists an independent duty that has been breached by the person so charged.").

10  The government argues that to prove materiality with regard to the fraudulent scheme, the Ninth
11  Circuit has held that "[i]t is only necessary to prove that it is a scheme reasonably calculated to
12  deceive." *United States v. Woods,* 335 F.3d 993, 998 (9th Cir. 2003). An indictment alleging wire
13  fraud need not state that specific misrepresentations are involved, and the government is not required
14  to prove any particular false statement was made. *Id.* at 998-999 (holding that "[t]he arrangement of
15  the words or the circumstances in which they are used may create an appearance which is false or
16  deceptive, even if the words themselves fall short of this."). The government argues that the indictment
17  clearly articulates that defendant Shang devised a scheme whereby he would have recruits open
18  accounts, cause the casinos to believe that the recruits had money in their accounts, drain the accounts,
19  and cause the casinos to not be paid back. (#103). The government argues that it is enough that
20  defendant Shang's scheme to defraud the casinos involved statements that had the "natural tendency
21  to influence or be capable of influencing [the person to whom they were] addressed." *United States v.*
22  *Gaudin,* 515 U.S. 506, 509 (1995).

23  Defendant Shang argues in his reply (#108) that the cases cited by the government are
24  distinguishable from the instant issue, because they deal with the jury instructions rather than the
25  indictment. Further, defendant Shang asserts that the government failed to dispute that since the
26  defendant was not in a fiduciary relationship with the alleged victim casinos, omissions or concealments

13

cannot support a conviction under the federal fraud offenses. *Id;* See *Benny,* 786 F.2d at 1418. Defendant Shang also contends that the indictment contains no affirmative misrepresentations allegedly made by either Shang or his "recruits." (#108).

### b. Discussion

The court finds that the superseding indictment (#57) alleges that defendant Shang's conspiracy involved making material misrepresentations to the Casinos. The superseding indictment states that defendant Shang recruited individuals to open bank accounts under his umbrella account, and that Shang deposited money into the account. (#57). Shang would then help the recruit apply for a line of credit at the casinos, utilizing the bank account previously opened. *Id.* The indictment alleges that the casinos would approve the line of credit "based at least in part upon the amount of money in the recruit's bank account." *Id.* Therefore, even though the indictment does not contain the "buzz word" material in this section, the court finds that it was material to the casinos that the accounts in fact contained money. This part of the scheme is were the falsehood lies, as defendant Shang would empty the bank accounts, or transfer money out of the accounts as to only leave a nominal amount. *Id.* While it is true under *Woods* that the indictment need not allege the making of a "*specific* false statement," what is required, that the *materiality* of the scheme or artifice is alleged, is seen here. *Omer,* 395 F.3d at 1089. Thus, the indictment should not be dismissed for failure to allege materiality.

### 2. Failure To Allege A Criminal Act

### a. Arguments

Defendant asserts that the superseding indictment (#57) does not contain any allegations that amount to a criminal act. (#82-1). The indictment alleges that defendant Shang deposited money, helped the recruits apply for credit markers, instructed the recruits on how to play a casino game, and paid back the casinos for the initial debt. (#57). The defendant asserts that none of these acts are criminal, and that the only persons alleged to have committed criminal acts are the un-indicted "recruits." (#82-1). It is alleged that defendant Shang did not pay back the casino debts. (#57). However, these were debts of the recruits, and there is nothing illegal about not paying back the debt

14

of another, defendant argues. *Id.* Defendant also argues that nowhere in the fourteen page indictment does the government allege that the "recruits" were "duped" by defendant Shang or under the influence of or threatened by Shang. *Id.* It is the recruits, defendant asserts, that performed the acts alleged in the indictment, and all Shang did was pay back the initial debt to the casinos. *Id.*

The government asserts that the indictment should not be dismissed on these grounds, because the indictment alleges that defendant Shang and others known and unknown devised a scheme to defraud the casinos. (#103).

**b. Discussion**

In reviewing the superseding indictment (#57), the court finds that the indictment alleges a criminal act: the indictment alleges that defendant Shang (1) opened an umbrella bank account, with multiple sub-accounts in other individual's names, but remained the sole signatory on the accounts, (2) recruited persons to open bank accounts, (3) deposited money into the recruit's bank account, (4) made the recruits write him a check for the amount deposited so that Shang could later withdraw his funds, (5) helped the recruit apply for a line of credit at a casino (and the casino approved the line of credit based on the amount of money in the recruit's account), (6) *after* the approval, defendant would deposit the recruit's check or electronically transfer the money out of the recruit's account, (7) once the credit approval occurred, defendant instructed the recruit to withdraw casino chips and play baccarat, (8) after controlling the game and making it appear like the recruits were losing by pocketing the chips or handing them to a co-conspirator, Shang would receive the chips, cash them, and pay back the initial debt, and (9) after the recruit would reach the desired level of credit approval, the recruit would pretend to lose all his chips, and Shang would convert the chips to cash and never pay back the casino.

The indictment (#57) also alleges that in executing the scheme outlined above that resulted in the loss to the casinos, Shang caused wire communications to be carried out by way of the deposits and withdrawals of funds from the bank accounts. Thus, the indictment clearly alleges a violation of 18 U.S.C. § 1343 (defined as "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises,

15

transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice..."). Therefore, the indictment should not be dismissed for failure to allege a criminal act.

### 3. Duplicity

Defendant Shang argues in his motion (#82-1), that the indictment should be dismissed because it is duplicitous. The superseding indictment (#57), defendant alleges, presents one substantive charge and one count of conspiracy to commit the substantive charge, but also alleges the substantive count twenty-two times. (#82-1). Further, the defendant argues, the "manner and means" section suggests that there may have been dual purposes in the alleged scheme, i.e. one to get casino markers by depositing and withdrawing money into bank accounts, and another to roll chips. *Id.*

The government asserts that it is "unclear" exactly what defendant is alleging, but that even if multiple crimes were being charged in count one, there is no duplicity, because an agreement to commit multiple crimes may be alleged in a single conspiracy count. *United States v. Smith,* 891 F.2d 703, 712 (9th Cir. 1989)(holding that "[t]he allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for [t]he conspiracy is the crime, and that is one, however diverse its objects.")(internal quotations and citations omitted). Defendant Shang did not address the duplicity argument in his reply. (#108).

The court finds that as the indictment alleges conspiracy, duplicity is not an issue and dismissal is not warranted. See *Smith,* at 712.

**C.    Conspiracy and Aiding and Abetting Fail**

Since the court finds that the substantive charge of wire fraud should not be dismissed, the charges of conspiracy to commit wire fraud and aiding and abetting survive. *Thor v. United States,* 554 F.2d 759(1977).

. . .

. . .

16

**RECOMMENDATION**

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that defendant Shang's Motion to Dismiss Superseding Indictment (#82) be DENIED.

DATED this 26th day of January, 2012.

_____
**CAM FERENBACH**
**UNITED STATES MAGISTRATE JUDGE**