UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>                                                    )<br>                           Plaintiff,      )<br>                                                    )  2:11-cr-00110-RLH -VCF-1<br>v.                                               )<br>                                                    )  SECOND MOTION TO DISMISS<br>DE RONG SHANG,                      )  SUPERSEDING INDICTMENT (#140)<br>                                                    )<br>                           Defendant. )<br>                                                    ) | |

# REPORT & RECOMMENDATION

The defendant, De Rong Shang, is under indictment on charges of wire fraud (18 U.S.C. § 1343), conspiracy to commit wire fraud (18 U.S.C. § 1349), and aiding and abetting (18 U.S.C. §2). The matter before the court is defendant Shang's Second Motion to Dismiss Superseding Indictment (#140). The government filed an Opposition (#148), and defendant Shang filed a Reply (#154).

## BACKGROUND

On March 22, 2011, the government filed the original indictment against defendant Shang. (#1). On April 23, 2011, defense counsel for Shang served the government with a discovery request letter seeking the production of documents. (#140 Exhibit A). The list included: (1) a written summary of any testimony that the government intends to use under Rules 702, 203, or 705 of the Federal Rules of Evidence at trial; (2) any statement of co-conspirators made during the course of the conspiracy and in furtherance of the claims and objectives of the conspiracy which are treated as statements of Mr. Shang by way of the government's conspiracy count; (3) any statement of a co-defendant that is subject to disclosure under Federal Rule of Criminal Procedure 16; (4) the names and addresses of persons known to the government who have either been interviewed and/or have knowledge of facts pertaining to this case and are discoverable under Rule 16; (5) any exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963); (6) the names and addresses of individuals who the government intends to call as

witnesses at trial and any arrest or conviction record of any such individuals; (7) the written statements of individuals who the government does not plan to call as witnesses and are nonetheless still discoverable under Rule 16; and (8) any evidence of any representation(s) made by the government to co-defendants or unindicted co-conspirators or other witnesses. *Id.*

Defendant Shang's counsel did not receive a response from the government. (#140). On May 4, 2011, defense counsel called the government and left a message expressing "concern" regarding the lack of discovery. (#140 Exhibit B). On May 6, 2011, defendant Shang's counsel received a CD containing 2,140 documents, bate stamped 1-2140. (#140). The government asserts that it prepared a nearly identical disk for co-defendant Yuli Eaton, and that the government included a receipt of acknowledgment form for co-defendant's counsel to sign when he picked up the disk. (#148). Co-defendant's counsel did not pick up the disk, and when the second batch of discovery was ready, the government "rolled over" the first batch into the second. *Id.* The second batch was bates stamped 2141 - 2173, and contained a 33-page affidavit. *Id.* Defendant Shang was not provided with the second batch of discovery containing the affidavit at this time. (#140).

On July 13, 2011, Shang's counsel sent an email to the government requesting its "intent to use" evidence, and any "additional 302 statements which may not have been produced and to which *Brady* information, however small, may be contained therein." (#140 Exhibit D). The government did not produce any additional documents at that time. (#140). On July 15, 2011, Shang filed a motion to dismiss the indictment (#30), and defendant Shang and co-defendant Eaton filed a joint motion to sever trials (#31). On August 19, 2011, Shang's counsel and the government exchanged emails regarding document production. (#140 Exhibit E). On August 25, 2011, the government prepared a third batch of discovery with bates stamp numbers 2174 - 2392. (#148). On August 31, 2011, defendant's counsel received this batch via Fed Ex. *Id.* Co-defendant's counsel picked up all three batches on August 29, 2011. *Id.*

On September 9, 2011, the court issued a report and recommendation to dismiss the indictment.

(#51). On October 7, 2011, the court entered an order granting the motion to sever trials. (#56). On October 11, 2011, one day before to calendar call for defendant Shang's trial, the government filed a superseding indictment. (#57). On November 21, 2011, immediately following defendant Shang's arraignment on the superseding indictment, defendant Shang's counsel hand delivered a second discovery letter to the government. (#140). The letter sought documents that support the superseding indictment, and requested the production of any additional witness statements, the government's "intent to use" evidence, and additional bank records that FBI Agent Mike Kung had informed defense counsel were subpoenaed. (#140 Exhibit F).

On December 2, 2011, the government produced three "302" statements pertaining to the superseding indictment (#140 Exhibit G). Thereafter, defense counsel provided the government with defendant Shang's expert's eight page psychiatric evaluation and summary of findings. (#140 Exhibit H). On December 21, 2011, defendant Shang filed several pretrial motions. The court held a hearing on the motions on January 20, 2011. (#111). In a written order, the court ordered the government to produce "a final list of its proposed trial witnesses," "information regarding its expert witnesses in accordance with Rule 16," "a copy of the subpoena and the bank records it has in its possession," and provide the defendant with notice of any evidence it "intends to use" in its "evidence-in-chief" by Tuesday, January 24, 2012 at 4:00 pm. *Id.*

The court also permitted defendant Shang to take the deposition of John To, to have Yuli Eaton's name stricken from the caption and several pages of the superseding indictment, and to have the superseding indictment's forfeiture allegation redacted if it is read to the jury at any time. *Id.* The court permitted the deposition of John To because "exceptional circumstances" existed, *i.e.* Mr. To is a material witness whose testimony is unavailable through any other source. *Id.* The court noted that defendant Shang contended that there is a missing witness Mr. Slack, and that since Mr. Slack's testimony is not available, Mr. To is the only other witness that can provide exculpatory testimony. *Id.*

3

On January 23, 2012, the government filed two emergency motions to stay the Magistrate Judge's order as to the early production of its witness list, exhibit list, and defense counsel's ability to depose Mr. To.  (#112 and #113).  The court granted the motions on January 24, 2012.  (#118 and #119).  In accordance with the court's order (#111), the government produced sixteen pages of additional bank records and the subpoena it issued to Bank of America.  (#140 Exhibit I).

On January 25, 2012, defense counsel sent an email to the government inquiring about any possible missing discovery.  (#140 Exhibit J).  In the email, defense counsel stated that "[p]ursuant to your bates stamp numbers on the documents you produced, it appears that we are missing 2141 to 2173. If you could please produce these select documents or confirm that there are no documents for those numbers I'd appreciate it." *Id.*  On January 26, 2012, the government produced a 33-page affidavit bate stamped numbers 2141 - 2173.  (#140 Exhibit K).  After reviewing the document, Shang's counsel sent an email to the government regarding its failure to produce the affidavit.  (#140 Exhibit L).  In the email, defense counsel asked the government why it had not produced the document earlier, stated that the government's failure to do so was intentional, asserted that the affidavit materially affects the defense, and gave the government an opportunity to explain itself. *Id.*  Shang's counsel asserts that the government never responded to the email (#140).

After Shang's counsel sent the email to the government, she inquired of counsel for defendant Yuli Eaton as to whether the government had provided counsel with the 33-page affidavit.  (#140). Eaton's counsel indicated that in July of 2011[1], the government had produced a separate CD solely containing the missing 33 pages. *Id.*

**DISCUSSION**

**I.    Second Motion To Dismiss Superseding Indictment (#140)**

Defendant Shang asks this court to dismiss the superseding indictment because the government

---

[1] The government contends that the affidavit, which was combined with the first and third batches of discovery, was picked up by co-defendant's counsel in August of 2011. (#148).

4

1  failed to timely disclose the 33-page affidavit. (#140). Defendant Shang asserts that since the affidavit
2  contains both exculpatory statements and contradictory statements from the government's witnesses,
3  the government violated its "constitutional duty to disclose." See *United States v. Acosta,* 357 F. Supp.
4  2d 1228, 1240 (D. Nev. 2004) (Acosta I) (citing *United States v. Bagley*, 473 U.S. 667, 675 (1985)
5  (quoting *United States v. Agurs*, 427 U.S. 97, 108 (1976))("A prosecutor only violates his constitutional
6  duty to disclose if 'his omission is of sufficient significance to result in the denial of the defendant's
7  right to a fair trial.'").

8        Defendant Shang asserts that if he had received the affidavit when defendant Eaton did, in
9  August of 2011, (1) additional suppression motions would have been made, (2) additional investigation
10 would have occurred, and (3) Mr. Shang would have had additional evidence to support his initial
11 motion to dismiss the superseding indictment. (#140). Thus, he argues, the government's failure to
12 produce the affidavit until 11 days before trial warrants dismissing the superseding indictment. *Id.*
13 Alternatively, Shang asserts, the court should strike the affidavit and all of its contents from use at trial,
14 including the statements from each government witness. *Id.* Since the failure to disclose was "willful,"
15 defendant Shang asserts, continuing the trial date would *not* be an appropriate remedy. *Id.*

16       According to the defendant, the 33-page affidavit contains statements that exonerate defendant
17 Shang from the allegations in the superseding indictment, corroborate defendant Shang's arguments in
18 his first motion to dismiss, and contradict government's witnesses' statements. (#140 Exhibit K). The
19 affidavit recounts statements made by Judy Wang, Richard Slack, John To, Jin Huang, Yuli Eaton,
20 Kejian Ricketts, and Linda Zeng. *Id.* At the end of each interview, it indicates that the witnesses
21 prepared a written statement. *Id.* The government did not provide the defendant with these written
22 statements until defendant Shang specifically requested their production after reviewing the affidavit.
23 *Id.* Defendant Shang argues that this further supports a finding that the government intentionally
24 withheld the information and did not want defendant Shang to be able to utilize it in his defense. *Id.*
25       Defendant Shang argues that the most egregious part about the non-disclosure of the affidavit,
26

5

is the fact that it contains statements and an interview from a missing exculpatory witness, Mr. Slack, the Director of Asian Marketing, before he fled the country. *Id*. Defendant Shang asserts that his defense team has always been led to believe that *noone* was able to interview Mr. Slack before he fled. *Id.* The defendant asserts that he was under the assumption that if the government had this interview in its possession, that it would have been produced. *Id.* This, coupled with the fact that the government produced statement from Mr. Slack's brother asserting that his brother had left the country without being interviewed[2], led defendant Shang to trust that the government was being truthful in its representations. *Id.*

Defendant Shang argues that the government intentionally withheld the affidavit, and that its conduct surrounding the issue with Mr. Slack's statements support a finding that the government knew the defendant was not in possession of the affidavit. *Id.* In defendant Shang's motion to dismiss the superseding indictment he asserted that Mr. Slack is a "key witness" who *could* have offered exculpatory evidence *if* not for the government's pre-indictment delay. (#82). In defendant Shang's motion to compel discovery, he submitted to the court that the deposition of Mr. To was necessary, as Mr. Slack, the missing exculpatory witness, had fled the country. (#85).

In opposition to the motion to dismiss, the government argued that "[t]he [d]efendant couches the prejudice he purportedly suffered in terms of testimony that "could and would" ([d]efendant's [m]emorandum at 4) have been offered," and that "[d]efendant presents no authority to support his claim that his speculation rises to the level of prejudice to meet his burden." (#103). The government further stated that "[t]he only missing witness the [d]efendant points to is Richard Slack, and, even then, the [d]efendant only makes speculative claims as to what Slack's testimony would be at trial." *Id.* Defendant Shang asserts that the government's argument that defendant Shang was merely

---

[2] The 33-page affidavit included a description of an interview with Mr. Slack that was conducted by the Nevada State Gaming Control Board, and not the FBI or the government. (#140 Exhibit K). The government asserted during oral argument that Mr. Slack's brother's statement was not inconsistent or misleading, because the government itself had not interviewed Mr. Slack.

6

1  "speculating" as to what Mr. Slack "could and would" have said, demonstrates the government's bad
2  faith with regard to the affidavit. (#154). The defendant submits that if the government believed the
3  affidavit containing statements from Mr. Slack was in defendant's possession, the government would
4  have pointed to the statements instead of arguing that the defendant was "speculating." *Id.* Defendant
5  Shang argues that while the government was making this speculation argument, the government had the
6  affidavit in its possession and knew what Mr. Slack said and would testify to. *Id.*

7  Defendant Shang asserts that the government's failure to disclose the affidavit severely
8  prejudices defendant. *Id.* Once defendant Shang realized the gap in bates numbers and received the 33-
9  page affidavit, he was forced to "scramble and try to locate these newly identified individuals to ask
10 them about incidents that occurred five years ago, investigate new leads and go down new roads." *Id.*
11 The government's conduct also caused a third trial continuance, over defendant Shang's strong
12 objection, and, in all, defendant Shang argues that the government's conduct has caused unnecessary
13 delay, costs, and prejudice, because defendant Shang continues to have to spend time, energy, and
14 resources (on retained counsel) building his defense every time the government decides to file a
15 superseding indictment or finally produce documents, only after the defendant asks for the discovery.
16 *Id.*

17 **II.    Government's Opposition (#148)**

18 The government strongly asserts that the alleged "failure" to produce the 33-page affidavit was
19 a "harmless clerical error," and was not in bad faith or an intentional breach of its disclosure obligation.
20 (#148). The government concedes that it had a duty to disclose the material, but argues that the fact that
21 it had bate stamped the affidavit, provided it to co-defendant Yuli Eaton, and immediately provided the
22 affidavit upon request, demonstrates that the government acted in good faith. *Id.* The government
23 contends that its clerical error was innocent, and that the parties had proceeded upon the mistaken belief
24 that the affidavit had been provided to defendant Shang. *Id.*

25 The government demonstrates in its opposition how it prepared the second batch of discovery

1  containing the 33-page affidavit, and accidentally provided it only to co-defendant Eaton. *Id.* The
2  government argues that co-defendant Eaton had not picked up the first batch of discovery which
3  contained bate stamps 1-2140, and that when the second batch, which contained bate stamps 2141-2173,
4  was ready, the government combined the two batches for co-defendant to pick up. *Id.* The government
5  asserts that it did not realize that it had not provided defendant Shang with the affidavit, and that it
6  proceeded under the assumption that it had. *Id.*

7  The government argues that dismissing the indictment is not warranted, because the "disclosure
8  [was] made at a time when [the] disclosure would be of value to the accused." *United States v.*
9  *Terragna,* 390 Fed. Appx. 631 (9th Cir. July 26, 2010)(unpublished) *(quoting United States v. Aichele,*
10 *941 F.2d 761, 764 (9th Cir. 1991)).* The government argues that the defendant will have a full
11 opportunity at trial to make use of the document, and that the draft affidavit still has value to defendant's
12 case. (#148). The government asserts that defendant Shang could move to supplement his motion to
13 dismiss the superseding indictment, or object to the report and recommendation, if Shang believes that
14 information contained in the affidavit would "completely exonerate" Shang. *Id.*

15 Sanctions are not appropriate and would be disproportionate, the government asserts, because
16 the government's inadvertent failure to disclose has not prejudiced defendant. *United States v.*
17 *Aceves-Rosales,* 832 F.2d 1155, 1157 (9th Cir. 1987). With regard to the written statements mentioned
18 in the affidavit, the government asserts that it did not have the statements in its possession, and was
19 therefore not required to produce them. (#148); See *United States v. Aichele*, 941 F.2d at 764
20 (information in state files is not within the control of a federal prosecutor for Brady purposes.); *United*
21 *States v. Hsieh Hui Mei Chen,* 754 F.2d 817, 824 (9th Cir. 1985) ("While the prosecution must disclose
22 any information within the possession or control of law enforcement personnel * * * it has no duty to
23 volunteer information that it does not possess * * *."). At oral argument, when questioned by the court
24 about the Mr. Slack "speculation" argument, the government explained that it assumed defendant Shang
25 had the 33-page affidavit and its argument was not inconsistent with that assumption.

26

**III.     Relevant Law/Recommendation**

    **A.     Duty To Disclose**

Pursuant to Federal Rule of Criminal Procedure 12(b)(4)(B), "[a]t the arraignment or as soon afterward as practicable, the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16." Rule 16(a)(1)(E) provides that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E).

Local Rule 16(b)(1)(A) states that "[i]n cases that will be governed by a joint discovery agreement, the parties agree the government will (A) disclose all matters required by Federal Statute, Rule, or the United States Constitution, and (B) subject to any applicable work product protections, law enforcement privileges, or protective orders, voluntarily disclose (a) any investigative reports describing facts relating to charges in the indictment and (b) any audio or video recordings relating to the charges in the indictment. The defense will make any reciprocal disclosures required by Federal Statute, Rule, or the United States Constitution." "The government shall make the disclosures required by federal statute, rule, or the United States Constitution available within seven (7) days of filing the joint discovery statement." LR 16(b)(1)(D)(iii).

The "United States Attorney is held to a higher standard," and is "the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is

9

not that it shall win a case, but that justice shall be done.[3]" *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). The prosecutor in a criminal case is required to "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense..." Nevada Rule of Professional Conduct 3.8(d); LR IA 10-7(a).

The government does not deny that it had a duty to disclose the affidavit under the aforementioned rules, and asserts that it complied with this duty by immediately producing the affidavit once it learned of its inadvertent failure to do so. (#148).

**B.    Violation Of Duty To Disclose**

**1.    *Brady* Requirements**

The Ninth Circuit has held that a district court may dismiss an indictment on the grounds of outrageous government conduct *if* the conduct amounts to a due process violation. See *United States v. Barrera-Moreno et al.*, 951 F.2d 1089, 1091 (9th Cir. 1991) (citing *United States v. Simpson*, 813 F.2d 1462, 1464-65 (9th Cir. 1987)(Simpson I)). In *United States v. Chapman,* the Ninth Circuit held that the district court may dismiss an indictment even if the violation does not rise to the level of a due process claim under its supervisory powers "to implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and to deter future illegal conduct." 524 F.3d 1073, 1085 (9th Cir. 2008)(upholding a Nevada District Court ruling that dismissed a superseding indictment with prejudice under the court's supervisory power because the Government failed to produce *Brady*

---

[3] The court reminds the government of this heightened standard, and is concerned with the government's failure to provide defendant Shang with this important document, which it admittedly had at the time of its first discovery production. The government should maintain records of its discovery production to ensure that it provides all required evidence to the defendant. The defendant should not be required to request the missing pages from the government's production. The court should not be forced to intervene due to conduct such as this, and any future conduct of this nature by the government will result in this court exercising its supervisory powers and recommending severe sanctions, and possibly the dismissal of the indictment.

10

and *Giglio* documents to the defense and then refused to take responsibility for the failure until Judge Mahan required the Government to produce evidence of their alleged production) (citing *United States v. Simpson*, 927 F.2d 1088, 1090 (9th Cir. 1991) (Simpson II)).

A prosecutor violates his duty to disclose if the defendant can demonstrate that the evidence the government suppressed (1) was exculpatory or impeaching, (2) should have been, but was not produced, and (3) was material to his guilt or punishment. *Brady,* 373 U.S. 83. Materiality under *Brady* depends on whether the material would have an impact on the result of the proceedings. *Id.* Here, the court finds that no *Brady* violation occurred, because defendant Shang cannot satisfy the elements enumerated in *Brady. Id.* While the parties dispute whether the affidavit contains exculpatory or impeaching evidence, the government eventually produced the 33-page affidavit. (#140 and #148). Thus, the defendant does not satisfy the second requirement of demonstrating that the evidence should have been produced by was not. *Brady,* 373 U.S. 83.

### 2. Value of Material/Ability To Mitigate

In *United States v. Houston,* 648 F.3d 806, 813 (9th Cir. 2011), the court held that there is no *Brady* violation so long as the exculpatory or impeaching evidence is disclosed at a time when it still has value. See also *United States v. Vgeri*, 51 F.3d 876, 880 (9th Cir.1995) (impeaching evidence disclosed *during trial* was still valuable because the defense could use it on cross-examination); *United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir.1988) (impeaching evidence disclosed *after a witness had finished testifying* did not constitute a *Brady* violation because the court had offered to recall the witness for further cross-examination in light of the new impeaching evidence).

Defendant Shang was provided with the affidavit on January 26, 2012, and the trial is currently set for March 12, 2012. (#140 and #141). The disclosure, although admittedly delayed, was at a time when the affidavit still has value to defendant Shang. *Houston,* 648 at 813. Defendant Shang was provided with the affidavit *more than a month before trial,* and can utilize the affidavit and associated witness statements during cross-examination to impeach the government's witnesses, as support for its

11

1  objection to the court's report and recommendation, and in preparation for the upcoming trial. See
2  *Vgeri*, 51 F.3d at 880; *Gordon*, 844 F.2d at 1403.  Thus, defendant Shang has the ability to mitigate any
3  alleged prejudice or damage cause by the delayed production of the affidavit.  *Id.*

### 3. Pre-Trial Duty To Disclose

"*Brady*'s concern whether a constitutional violation occurred after trial is a different question than whether *Brady* is the full extent of the prosecutor's duty to disclose pretrial. *Brady*'s materiality standard for due process violations in a post-trial context should not be used to sanction any and all conduct that does not rise to a constitutional violation of defendant's due process rights because the United States Attorney is held to a higher standard." *Acosta,* 357 F. Supp. 2d at 1232*.* "*Brady*'s standard of materiality "is only appropriate, and thus applicable, in the context of appellate review. Whether disclosure would have influenced the outcome of a trial can only be determined after the trial is completed and the total effect of all the inculpatory evidence can be weighed against the presumed effect of the undisclosed *Brady* material...This analysis obviously cannot be applied by a trial court facing a pretrial discovery request." *United States v. Sudikoff*, 36 F. Supp. 2d 1196 (C.D.Cal.1999). As *Sudikoff* recognizes, under *Bagley*'s cumulative "materiality" standard, "it becomes extremely difficult if not impossible to discern before trial what combination of evidence will be deemed "material" after trial under *Brady*." *Acosta,* 357 F. Supp. 2d. at 1233.

Here, the issue of non-disclosure has occurred pre-trial, and defendant Shang argues that the court need not find that the affidavit was material, and only that the affidavit is "useful," "favorable," or "tends to negate the guilt or mitigate the offense." *Acosta,* at 1233. The court notes that *Acosta* is a District Court case addressing the government's pre-trial duty to disclose evidence in the context of a motion to compel and not a motion to dismiss. *Acosta,* 367 F. Supp. 2d. at 1231-1232. The court agrees that defendant Shang need not demonstrate "materiality" in a pre-trial phase, such as this, but finds that a *Brady* violation has not occurred because defendant Shang was in fact provided with the affidavit and the disclosure was at a time when the affidavit still has value to the defendant. See *Acosta,*

at 1233; *Houston,* 648 at 813; *Brady,* 373 U.S. 83.

### C.     Sanction

In *United States v. Valencia*, the Ninth Circuit stated that "the appropriate sanction for a failure to comply with a discovery rule should rest in the district judge's sound discretion." 656 F.2d 412, 415 (9th Cir. 1981).  Pursuant to Fed. R. Crim. P. 16(d)(2), "[i]f a party fails to comply with [Rule 16], the court may: (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances."

Under these circumstances, the court finds that sanctioning the government in the form of dismissing the indictment is not appropriate.  The government admits that it was required to produce the affidavit, took responsibility for not doing so, and asserts that its failure to do so was an unintentional clerical error.  See *Chapman,* 524 F.3d at 1086 (noting the government's "unwillingness to take responsibility for [its] conduct" as support for the finding of a *Brady* violation.).  The government produced the affidavit the day after defendant Shang inquired as to the missing pages, and provided defendant Shang with the written statements as requested thereafter.  Although the court recognizes that the government should have acted more diligently in assuring that the affidavit was produced, the court finds no evidence that the government's conduct was so outrageous or that it acted intentionally or in bad faith.  See *Barrera-Moreno, et al,* 951 F.2d at 1092 (finding that the government's actions must be "so grossly shocking and so outrageous as to violate the universal sense of justice.")(internal citations and quotations omitted).

In the alternative, defendant Shang asks this court to strike the affidavit in its entirety and to exclude the testimony of the witnesses contained therein. (#140 and #154).  The court finds that striking the affidavit and the testimony of the witnesses it not an appropriate sanction.  Defendant Shang is able to mitigate any alleged prejudice caused by the late disclosure, as the production of the affidavit was made at a time when the affidavit still has value to defendant Shang.  See *Vgeri*, 51 F.3d at 880;


*Gordon*, 844 F.2d at 1403; *Houston,* 648 at 813. The court finds that striking the affidavit and its contents from trial would be a disproportionate sanction, and, as defendant Shang argues that the affidavit contains exculpatory and impeachment material, the use of the affidavit at trial is beneficial to defendant Shang as well.

## RECOMMENDATION

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that defendant Shang's Second Motion to Dismiss Superseding Indictment, or, In The Alternative Strike the Affidavit (#140) be DENIED.

As the trial date is March 12, 2012, any objection or reply thereto shall be filed in an expedited manner. Objections are due Monday, March 5, 2012, and Replies are due Thursday, March 8, 2012.

DATED this 28th day of February, 2012.

**CAM FERENBACH**
**UNITED STATES MAGISTRATE JUDGE**

14